# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Phyllis Ann Good,

                Plaintiff,        Case Nos.  15-cv-10133
                                                 15-cv-10134

v.                                 Hon. Judith E. Levy
                                 Mag. Judge R. Steven Whalen

Howmedica Osteonics Corp.,

                Defendant

    and

Stephen Pepke and Tara Pepke,

                Plaintiffs,

v.

Howmedica Osteonics Corp.,

                Defendant.

_____/

# OPINION AND ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS [*GOOD*, DKT. 10; *PEPKE*, DKT. 11] AND DENYING DEFENDANT'S MOTIONS TO STRIKE [*GOOD*, DKT. 11; *PEPKE*, DKT. 12] AS MOOT[1]

---

[1] The Court will refer to Case No. 15-cv-10133 as "*Good*" and Case No. 15-cv-10134 as "*Pepke*" in citations to the record.

These are products liability cases. Plaintiffs Phyllis Ann Good and Stephen Pepke each allege that they have experienced injury following the implantation of CerviCore Disc devices, which are manufactured by defendant. Pending are motions to dismiss both complaints.

## I.    Factual Background

Plaintiffs initially filed suit in the Southern District of Illinois on April 11, 2014, along with seven other recipients of the CerviCore device, and four other spouses. *McGrew v. Howmedica Osteonics Corp.*, Case No. 14-cv-430 (S.D. Ill.).

Of the fourteen plaintiffs, only one plaintiff resided in Illinois: Carol McGrew. The rest resided in a variety of other states. On January 13, 2015, the court granted defendant's motion to sever the plaintiffs and transfer venue of each of the *McGrew* plaintiffs' cases to their home states. (*Good, Pepke*, Dkt. 2.) On January 30, 2015, the Court held a telephonic status conference with counsel and set February 20, 2015 as the date for plaintiffs to file amended complaints and April 1, 2015 as the date for defendant to file a responsive pleading to each complaint.

2

Plaintiffs filed their amended complaints on February 21, 2015. Their amended complaints have been appended to the original complaint plaintiffs joined in Illinois. Plaintiffs allege that defendant manufactured the CerviCore device, and that it was defective. Good had a CerviCore device implanted on February 21, 2008. (*Good*, Dkt. 9 at 23.) Stephen Pepke had a CerviCore device implanted on March 20, 2008. (*Pepke*, Dkt. 10 at 23.)

Good alleges that "[a]round two months after the surgery, [she] began suffering from rashes," and "[l]ater that year, when the pain was so great she could no longer move her neck, [she] began receiving pain management treatments." (*Good*, Dkt. 9 at 23.) Pepke alleges that "[w]ithin a few days of implantation, [he] began experienc[ing] extreme pain," and that the "pain worsened over the next two years." (*Pepke*, Dkt. 10 at 23.)

Plaintiffs bring thirteen similar claims: 1) Design Defect, 2) Manufacturing Defect, 3) Failure to Warn, 4) Negligence, 5) Gross Negligence, 6) Fraud by Concealment, 7) Fraudulent Misrepresentation, 8) Negligent Misrepresentation, 9) Breach of Contract, 10) Breach of Express Warranty, 11) Breach of Implied Warranty, 12) Infliction of

Emotional Distress, and 13) Michigan Statutory and Common Law Remedies. Plaintiff Tara Pepke brings an additional claim for loss of consortium.

Defendant timely filed a motion to dismiss each complaint and a motion to strike certain paragraphs of each complaint on April 1, 2015. Oral argument was held on the motions on August 27, 2015.

## II.   Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir.2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

## III.   Analysis

### A. Timeliness of Motions to Dismiss

4

Plaintiffs argue that defendant's motions to dismiss are untimely, because defendant already answered their initial complaints in Illinois. Because an answer was already filed at some point in the litigation, plaintiffs contend that defendant cannot now file a motion to dismiss in response to plaintiffs' amended complaints. Plaintiffs also argue that the motion cannot be converted to a motion for judgment on the pleadings, because defendant has not filed an answer to the amended complaint.

Fed. R. Civ. P. 15(a) permits parties to file the same "required response" to an amended pleading, governed by Fed. R. Civ. P. 12, that parties would have been able to file in response to the original pleading. Plaintiffs' argument is self-refuting on its face: defendants cannot both be punished for filing an answer in Illinois and not filing an answer in Michigan. The motions to dismiss were timely filed and are properly considered at this stage.

### B. Choice of Law

Plaintiffs contend that, because this case was filed in Illinois, Illinois substantive law and statutes of limitations apply, while

defendant argues that Michigan substantive law and statutes of limitations apply.

Because the case was filed in Illinois, Illinois' choice of law rules apply. *In re Dow Corning Corp.*, 778 F.3d 545, 549-50 (6th Cir. 2015). Illinois courts apply the "most significant contacts" test, "which involves balancing a number of factors, including the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile or place of business of each party; and the place where the relationship between the parties is centered." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012).

Each of these factors requires that Michigan law be applied. First, plaintiffs had the devices implanted in Michigan, and dealt with the alleged injuries resulting from the implantations in Michigan. Second, the conduct causing the injuries (the implantation of the allegedly defective device) occurred in Michigan. Third, plaintiffs are both Michigan residents, and defendant is a New Jersey corporation.[2]

---

[2] Plaintiffs attempt to argue that defendant is a resident of Illinois because it does business in Illinois. However, under Illinois law, "a corporation can have but one residence, that being the State of its creation." *LeBlanc v. G.D. Searle & Co.*, 178 Ill. App. 3d 236, 239 (1988) (further citation omitted). Defendant was founded in New Jersey, and so is a resident of New Jersey for the purposes of these actions.

6

Finally, the relationship between the parties is centered in Michigan, where plaintiffs reside and have sought medical treatment.[3]

Illinois courts, however, will generally apply the Illinois statute of limitations "because statutes of limitations are procedural, fixing the time in which the remedy for a wrong may be sought rather than altering substantive rights." *Freeman v. Williamson*, 383 Ill. App. 3d 933, 939 (2008). The exception to this is Illinois' Borrowing Statute, which states that "[w]hen a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." Ill. Comp. Stat. Ann. Ch. 735 § 5/13-210.

Therefore, the Court will determine whether the claims brought in Illinois were barred by Michigan's statutes of limitations at the time of their initial filing. If they were, Michigan's statutes of limitations apply; if they were not, Illinois' statutes of limitations apply.

### C. Statutes of Limitations – Michigan Law

---

[3] This is further bolstered by the fact that plaintiffs each requested *Michigan* statutory and common law remedies in the alternative to the common law theories otherwise pled.

7

## a. Product Liability Claims

Michigan law's product liability statute is expansive, and brings under its umbrella any "action based on a legal or equitable theory of liability brought for . . . injury to a person or damage to property caused by or resulting from the production of a product." M.C.L. § 600.2945(h). "Production means manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling." M.C.L. § 600.2945(i).

Defendant correctly argues that under Michigan law, a court is to "determine the gravamen of a party's claim by reviewing the entire claim, and a party cannot avoid dismissal of a cause of action by artful pleading." *Att'y Gen. v. Merck Sharp & Dohme Corp.*, 292 Mich. App. 1, 10 (2011). With the exception of the breach of contract, fraud, and loss of consortium claims, the claims in this matter are all (1) based on a legal or equitable theory of liability, (2) brought for injury to a person, and (3) alleging that the loss was caused by or resulted from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection,

8

testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of a product. *Id.* at 10-11. Accordingly, plaintiff's design defect, manufacturing defect, failure to warn, negligence, gross negligence, negligent misrepresentation, breach of express warranty, breach of implied warranty, and catch-all Michigan statutory and common law remedy claims all sound as product liability claims.

The statute of limitations for product liability claims is three years. M.C.L. § 600.5805(13). "Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues," which in this case is "at the time the wrong upon which the claim is based was done regardless of the time when damage results." M.C.L. § 600.5827. Specifically, "[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted." *Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 231 n.5 (2003).

The Michigan Supreme Court has stated that "the plain language of M.C.L. § 600.5827 precludes the use of a broad common-law discovery rule to toll the accrual date of claims[.]" *Trentadue v. Gorton*, 479 Mich. 378, 407 (2007). Accordingly, the wrong is done at the first moment of

harm, and is not tolled because the plaintiff did not discover the harm until later.

Michigan courts have specifically held that there is no continuing wrongs doctrine in "cases involving products liability actions seeking damages for personal injury[.]" *Blazer Foods, Inc. v. Rest. Props., Inc.*, 259 Mich. App. 241, 247 (2003) (citing *Asher v. Exxon Co. U.S.A.*, 200 Mich. App. 6353 (1993)). Michigan's products liability statute of limitations is not tolled because the wrong is not abated. "[A] separate cause of action [will not] accrue each day that defendant's tortious conduct continues." *Id.* at 246 (quoting *Jackson Co. Hog Prods. v. Consumers Power Co.*, 234 Mich. App. 72, 81 (1999)).

The statute of limitations on Good's product liability claims began running around two months after her CerviCore device was implanted on February 21, 2008, when she began experiencing rashes. (*Good*, Dkt. 9 at 23.) At the latest, that period began running "[l]ater that year [in 2008], when the pain was so great she could no longer move her neck[.]" (Id.) At the latest, the statute of limitations ran on Good's product liability claims some time in 2011, well before Good filed suit on April 11, 2014.

The statute of limitations on Pepke's product liability claims began running "[w]ithin a few days of [the March 20, 2008] implantation" when he "began experienc[ing] extreme pain[.]" (*Pepke*, Dkt. 10 at 23.)  At the latest, the statute of limitations ran on Pepke's product liability claims in late March 2011, well before Pepke filed suit on April 11, 2014.

For these reasons, Good and Pepke's claims for design defect, manufacturing defect, failure to warn, negligence, gross negligence, and breach of implied warranty are barred by the applicable three-year statute of limitations.

### b. Fraud Claims

Fraud claims under Michigan law are subject to a six-year statute of limitations.  M.C.L. § 600.5813.  As set forth above, Michigan courts classify all claims related to product liability as product liability claims. On review of relevant Michigan caselaw, it is unclear whether the specific statute of limitations for fraud cases is subsumed by the broadly applicable three-year products liability statute of limitations when a plaintiff is alleging fraud in relation to disclosure of a product defect.  It is immaterial, however, because the fraud claims are barred by the six-

year statute of limitations, to which the discovery rule also does not apply. *See Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 231-232 (2003) (holding that the discovery rule does not apply to the accrual of actions for fraud).

In each of their fraud claims, plaintiffs argue that but for the fraud, they would not "have allowed the devices to be implanted in their bodies." (*Good*, Dkt. 9 at 37, 38; *Pepke*, Dkt. 10 at 37, 38.) Accordingly, the fraud had to have occurred before their implantations. The statute of limitations on their fraud claims, accordingly, ran on or before February 21, 2014 for Good and March 20, 2014 for Pepke. Both plaintiffs' claims expired before they filed suit in Illinois on April 11, 2014.

Plaintiffs' negligent misrepresentation claims likewise may have either the three-year period of limitations applicable to personal injury claims or the six-year statute of limitations applicable to fraud claims, depending on whether the claim sounds in personal injury or damages to financial expectations. *Bowman v. Greene*, Dkt. No. 308282, 2013 WL 5925995, at *4-5 (Mich. Ct. App. Nov. 5, 2013). Under either time period, dismissal is required.

12

Plaintiffs argue that but for the negligent misrepresentation, "they would not have allowed the devices to be implanted in their bodies." (*Good*, Dkt. 9 at 38; *Pepke*, Dkt. 10 at 38.) The negligent misrepresentation must have occurred before their implantations, and because the common law discovery rule is inapplicable to both personal injury and fraud claims, the statute of limitations on plaintiff's negligent misrepresentation claims ran either in 2011 or shortly before suit was filed in 2014.

### c. Infliction of Emotional Distress

Plaintiff's infliction of emotional distress claims are also subject to a three-year statute of limitations, and must be brought within three years after the claim accrues. *Nelson v. Ho*, 222 Mich. App. 74, 85 (1997). The claims are likewise subject to M.C.L. § 600.5827, which provides that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."

Plaintiffs allege that defendant either intentionally or negligently inflicted emotional distress through the same acts that underlie most of plaintiffs' other claims: "concealing and ignoring CerviCore's risks, by concealing, ignoring, and refusing to correct repeated deficiencies in its

13

manufacturing processes, by misleading [plaintiffs] about the contents of CerviCore, by misleading them about Howmedica's commitment to care for their health, and by not actually providing follow-up care as promised." (*Good*, Dkt. 9 at 42; *Pepke*, Dkt. 10 at 42.)  This makes the emotional distress claims hybrid claims based in part on product liability claims, in part on fraud claims, and in part on breach of contracts claims.

In *Kott v. Howmedica Osteonics*, Case No. 15-cv-11349, the Court treated plaintiff's identical infliction of emotional distress claim as a products liability claim, as it fulfilled all of the elements of a products liability claim under Michigan law, even with the additional allegations based on fraud and breach of contract. (*Kott*, Dkt. 12 at 12.)  That is the correct analysis, but the breadth of plaintiffs' allegations in these claims merits further discussion.

To plead intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford,* 237 Mich. App. 670, 674 (1999).  Negligent infliction of emotional distress "requires that the plaintiff must have witnessed a

14

negligent injury to a third party." *Teadt v. Lutheran Church Missouri Synod,* 237 Mich. App. 567, 582 n.6 (1999).

Intentional infliction of emotional distress claims "accrue[] when all the elements of the claim have occurred and can be alleged in a proper complaint." *Schaendorf v. Consumers Energy Co.*, 275 Mich. App. 507, 512 (2007) (citation omitted). What plaintiffs have pleaded here is a course of conduct beginning with fraud and concealment predating their 2008 implantations, continuing through the implantation of allegedly defective devices, and ending with an alleged breach of contract.

As mentioned previously, the definition of a products liability action under Michigan law is any "action based on a legal or equitable theory of liability brought for . . . injury to a person or damage to property caused by or resulting from the production of a product." M.C.L. § 600.2945(h). The statute does not say that this basis must be the sole basis for the action, but instead that the action must be based on the aforementioned characteristics.

Plaintiffs' infliction of emotional distress claims are based on a legal or equitable theory of liability brought for injury to a person

15

caused by or resulting from the production of a product. Therefore, the claims accrued when the plaintiffs were first harmed – in this case, when the pattern of conduct alleged began. That was at some point prior to February 21, 2008 for Good, and March 20, 2008 for Pepke. The continuing wrongs doctrine may not be applied to products liability claims, and so plaintiffs' later allegations – even those allegations that occurred within the three years before they filed suit – cannot revive their claims.

The claims are, accordingly, time-barred and must be dismissed.[4]

### d. Breach of Contract

Defendant does not argue that plaintiffs' breach of contract claims are barred by Michigan's applicable six-year statute of limitations. M.C.L. § 600.5807(8). Plaintiffs' breach of contract claims do not identify a date on which the breach of contract occurred. However, there are only a few relevant weeks outside of the statute of limitations for both Good and Pepke during which the contract could have been breached: between February 21, 2008 and April 11, 2008 for Good, and

---

[4] The Court also notes that plaintiffs have failed to state claims for negligent infliction of emotional distress, as they do not allege that they witnessed negligent injuries to any third parties.

16

March 20, 2008 and April 11, 2008 for Pepke. The Court cannot determine at this point whether plaintiffs' breach of contract claims might be time-barred under Michigan law.

Because plaintiffs' breach of contract claims are not barred by Michigan law, the Court must determine whether the breach of contract claims are barred by Illinois' statute of limitations. The statute of limitations on a written contract in Illinois is ten years, making this claim timely. 735 Ill. Comp. Stat. 5/13-206. The Court notes, however, that if evidence establishes that defendant's first alleged breaches occurred on or before April 11, 2008, the claims may be time-barred due to Michigan's rejection of the continuing wrongs doctrine in contract cases. *Blazer Foods v. Rest. Props., Inc.*, 259 Mich. App. 241, 251 (2003).

### D. Fraudulent Concealment

Plaintiffs argue that the applicable statutes of limitations are tolled either by Michigan's fraudulent concealment rule, M.C.L. § 600.5855, or by equitable estoppel based on fraudulent concealment.[5]

---

[5] Because the Court must, by operation of Illinois law, determine whether plaintiffs' claims are timely filed in Michigan, the Court must apply Michigan's fraudulent concealment rule.

Michigan's fraudulent concealment rule provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

M.C.L. § 600.5855.

To prove fraudulent concealment, "[t]he plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Tonegatto v. Budak*, 112 Mich. App. 575, 583 (1982). "[T]here must be concealment by the defendant of the existence of a claim or the identity of a potential defendant[.]" *McCluskey v. Womack,* 188 Mich. App. 465, 472 (1991). "[The] plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Sills v. Oakland Gen. Hosp.*, 220 Mich. App. 303, 312 (1996). "For a plaintiff to be sufficiently apprised of a cause of action, a plaintiff need only be aware of a possible cause of action." *Doe v. Roman Catholic Archbishop*

18

*of Archdiocese of Detroit*, 264 Mich. App. 632, 643 (further citations omitted).

Plaintiffs argue that defendant fraudulently concealed their claims to the extent that that the two year statute of limitations following discovery of the existence of the claim has yet to run, because defendant "continues, to this day, to conceal the existence of the claims and its own identity as the wrongdoer." (Dkt. 8 at 14.)

This argument is not credible in light of the fact that plaintiffs filed suit. Either plaintiffs know of their claims, as proven by the lawsuit asserting them, or plaintiffs do not know of their claims, and the lawsuit is baseless. The Court must treat the lawsuit asserting plaintiff's claims as conclusive evidence that plaintiff is, in fact, aware of her claims.

Plaintiffs have also failed to plead fraudulent concealment in their complaints. Plaintiffs reference "fraudulent concealment" three times in their complaint, all in the same paragraph. (*Good*, Dkt. 9 at 27; *Pepke*, Dkt. 10 at 27.) Plaintiffs do not plead the acts or misrepresentations that comprised the fraudulent concealment, but assert only "Howmedica's fraudulent concealment, through affirmative

misrepresentations and omissions from Plaintiffs and/or their physicians" and argue that because of this concealment, they could not have known or learned through reasonable diligence of the risks they faced. (Id.; Id.)

It is impossible to discern from the complaint what acts or misrepresentations plaintiffs allege constitute defendant's fraudulent concealment. Accordingly, plaintiffs have not met their burden, and the Court cannot find that defendant fraudulently concealed any of plaintiffs' claims.

### E. Breach of Contract Claim

Defendant has moved to dismiss plaintiffs' breach of contract claims on the grounds that the contractual language asserted does not establish a duty owed by defendant to plaintiffs.

The elements of a breach of contract claim under Michigan law are (1) the existence of a contract between the parties, (2) the terms of the contract requiring performance of a certain action, (3) a breach, and (4) the breach causing injury to the other party. *Synthes Spine Co., L.P. v. Calvert*, 270 F. Supp. 2d 939, 942 (E.D. Mich. 2003).

Plaintiffs argue that defendant breached the following portion of

the informed consent agreement, signed before implantation:

> Medical treatment will be offered if you experience a
> complication or injury as a result of your participation in the
> clinical study.   You (or your insurance carrier) will be
> financially responsible for costs to treat a research-related
> complication or injury.  The study Sponsor [Howmedica] will
> reimburse the hospital and/or your study doctor for costs for
> necessary medical treatment for an injury or complication
> you experience that is solely as a direct result of the use of a
> CerviCore implant according to the study protocol and the
> costs for medical treatment are not covered by any
> responsible third party payer and are not attributable to
> negligence or misconduct by you, the hospital, or the study
> doctor.

(*Good*, Dkt. 9 at 19-20; *Pepke*, Dkt. 10 at 19-20.)  Plaintiffs also allege

that in or around 2010, an addendum was presented that stated the

following:

> Medical treatment will be offered if you experience a
> complication or injury as a result of your participation in the
> clinical study.   If it is determined by the Principal
> Investigator that the CerviCore device must be removed, the
> study Sponsor will cover the cost of the explant surgery if
> the explant surgery is performed at the Institution.  You (or
> your insurance carrier) will be responsible for costs to treat a
> research related complication or injury, including a
> complication or injury resulting from an explant surgery,
> unless the complication or injury is directly related to the

> CerviCore device and is treated at the Institution.  In this
> case, the study sponsor will cover the cost of treating the
> complications or injury.  The study sponsor will not provide
> any other form of compensation for injury.

(Id. at 20.)

Plaintiffs contend that these clauses required defendant to provide medical care and monitor the health of those patients who received CerviCore Discs.  Defendant contends that these clauses did not require it to provide medical care or to monitor the health of CerviCore patients.

Interpretation of the plain language of a contract determines the legal effect of the language within, and the Court's legal analysis does not entitle plaintiffs "to the same presumption in favor of the nonmovant as . . . factual allegations when a court rules on a motion to dismiss." *DeClercq v. JP Morgan Chase Bank, N.A.*, 618 Fed. Appx. 834, 836 (citing *Twombly*, 550 U.S. at 555).

The first contract clause plaintiffs reference states that "[m]edical treatment will be offered if you experience a complication or injury as a result of your participation in the clinical study."  Based on this language, plaintiffs contend that defendant had a contractual duty to

22

provide medical treatment. This passive-voice sentence does not say who will offer the medical treatment.

Reading further, the clause states that defendant "will reimburse the hospital and/or your study doctor for costs for necessary medical treatment for an injury or complication you experience . . . ." The contract creates a duty on defendant's part to reimburse a third party for medical treatment that third party provided. The contract does not state that defendant is a "hospital" or "study doctor." Instead, it states that the hospital and/or study doctor will provide medical treatment and that defendant will, in turn, cover the costs of that care in certain circumstances. If defendant were obligated to provide the medical treatment, it would not need to establish a provision to reimburse itself for the treatment it provided.

In operation, the contract does not state that defendant must provide medical treatment. It also contains no provision that can be read to create a duty on its part to monitor the health of patients. The 2010 addendum reinforces this interpretation of the contract. It states that "[i]f it is determined by the Principal Investigator that the CerviCore device must be removed, the study Sponsor will cover the

cost of the explant surgery if the explant surgery is performed at the Institution." The Principal Investigator (whom plaintiffs do not contend is defendant) is to determine whether the CerviCore device must be removed. Defendant covers the cost of the surgery, but is not the entity providing the actual treatment.

Plaintiffs have provided no contract language creating a duty on the part of defendant to do anything other than cover the cost of certain care, with other entities providing that care. Accordingly, plaintiffs have failed to state a claim for breach of contract.

### F. Loss of Consortium Claim

Plaintiff Tara Pepke asserts a claim for loss of consortium. Loss of consortium claims are independent claims derivative of underlying bodily injury claims. *Wesche v. Mecosta Cnty. Road Comm'n*, 480 Mich. 75, 85 (2008). Because Stephen Pepke has no bodily injury claims remaining in this case, Tara Pepke's loss of consortium claim has no claim of which it could be derivative. Accordingly, Tara Pepke's loss of consortium claim is dismissed.

### G. Denial of Leave to Amend

Plaintiffs seek leave to amend their complaints "[s]hould the Court determine any of [their] claims fail on procedural (as opposed to substantive) grounds[.]" (*Good*, Dkt. 15 at 32; *Pepke*, Dkt. .)  Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend a complaint] when justice so requires" if the party has already amended her pleadings once as a matter of course, which plaintiff has.  "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir.1995).

Here, plaintiffs seek leave to amend their complaints to avoid dismissal on statute of limitations grounds.  However, the Court can discern no way that plaintiffs could successfully amend their complaint to survive a Rule 12(b)(6) motion to dismiss on statute of limitations grounds unless they removed numerous pertinent facts from their complaints.  Those facts would include the time at which plaintiffs started experiencing complications from the CerviCore devices, and the time at which plaintiffs believe they were first defrauded.

25

Such an amendment would not be brought in good faith. The purpose of the amendment would be to remove or alter otherwise dispositive facts from the complaint in order to survive a motion to dismiss. The amendment would, at best, unnecessarily extend this litigation until summary judgment, when the Court would again be required to hold the same claims time-barred under the relevant statutes of limitations.

Leave to amend the complaint is therefore denied.

## IV.   Conclusion

For the reasons set forth above, it is hereby ordered that:

Defendant's motions to dismiss (*Good*, Dkt. 10; *Pepke*, Dkt. 11) are GRANTED;

Defendant's motions to strike (*Good*, Dkt. 11; *Pepke*, Dkt. 12) are DENIED AS MOOT; and

Plaintiffs' complaints are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


Dated: December 8, 2015          s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge


26

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 8, 2015.


s/Felicia M. Moses
FELICIA M. MOSES
Case Manager

27